**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**    **CASE NUMBER: 05-81027**
                **HONORABLE VICTORIA A. ROBERTS**

**v.**

**ALONZO BATES,**

    **Defendant(s).**
_____/

**I.  INTRODUCTION**

This matter is before the Court on Defendant Alonzo Bate's Motion for New Trial.

For the reasons stated below, the Court **DENIES** Defendant's motion.

**II.  BACKGROUND**

Defendant was charged in a 14-count indictment with mail fraud (Counts 1-4),

theft from a program receiving federal funds (Counts 5-8), interference with commerce

by extortion (Count 9), bank fraud (Count 10) and failure to file income tax returns

(Counts 11-14). Defendant pled guilty to counts 11-14. The Government dismissed

counts 1-4. Defendant went to trial on counts 5-10, which were based in part on

allegations that Defendant used his position as a Detroit city councilman to employ and

pay friends and relatives with public funds for work they did not perform. The jury

convicted Defendant on counts 5-8 and 10, but could not reach a verdict on count 9.

Pursuant to FRCP 33(a), Defendant asks the Court to vacate the judgment of

conviction and grant him a new trial because the Government failed to turn over

exculpatory evidence prior to trial and, therefore, deprived him of his due process right to a fair trial. Additionally, Defendant asks the Court to order the Government to turn over handwritten rough notes taken by government agents during debriefing interviews of lay witnesses who testified at trial.

## III. ARGUMENTS

In Count 7, the Government alleged that Defendant orchestrated a scheme to pay Verenda Arnold for services she did not perform. Arnold and Defendant have a son together. They were romantically involved from 1978 through 2004. Between May 2002 and December 2005, Arnold held a part-time position in Defendant's office as a legislative assistant, while she worked full-time for St. John's Riverview Hospital as an "incomplete chart room specialist." For her participation in the scheme, Arnold was indicted on federal charges of theft from a program receiving federal money and aiding and abetting. Two weeks before Defendant's trial, she pled guilty to a misdemeanor charge of theft of public money.[1] She did not testify at the trial.

Prior to Defendant's indictment, the Government interviewed Arnold twice. The second interview occurred on June 3, 2005. The meeting was attended by her attorney, Robert Harris, Assistant United States Attorney Michael Bullotta, FBI Agents Robert Beeckman and Michael Haynie, and United States Accounting Office Specialist Wendolyn Johnson. Harris and Haynie took notes during the meeting. Agent Haynie's formal summary of the meeting (a "302 report") was provided to Defendant prior to the

---

[1]On June 5, 2007, she was sentenced to two years probation. She was also ordered to pay $42,825 in restitution.

trial in response to Defendant's *Brady*[2] request.

After the trial, Defendant says he learned there were discrepancies between the

302 report Defendant received and the notes Agent Haynie and Harris took during the

second interview.  Agent Haynie indicates in his notes that Arnold said that Defendant

did not know she was not working her assigned 20 hours per week.  *See* Def. Exh. 2(b).

This statement was not included in the 302 report.

The Government disputed whether Arnold made the statement.  Haynie testified

during an evidentiary hearing that he was uncertain whether his note is based on a

statement by Arnold, her response to a question, or a summary of discussions on the

topic.  Arnold, however, testified at the evidentiary hearing that she, indeed, made the

statement reflected in Haynie's notes.  For purposes of this motion, the Court presumes

Arnold made the statement.

Based upon his review of Harris' notes of the June 3rd debriefing, Defendant

contends that Haynie also omitted the fact that Arnold strongly disagreed with the

Government's calculation of the hours for which she was wrongfully paid.  *See* Def. Exh.

2(c).  Harris wrote:

> --Estimate was wrong
>
> * * *
>
> --Est. was off
>
> --actual best belief at 50% of time

Def. Exh. 2(c).  Defendant asserts that Harris' notes show that Arnold insisted that she

---

[2]*Brady v Maryland,* 373 U.S. 83 (1963).

worked at least 50% of the hours billed to the City of Detroit, rather than 20% as calculated by the Government.

Defendant contends that the prosecution team (Bullotta and the agents) did or should have recognized that both statements were exculpatory and that failure to disclose them constituted a *Brady* violation. Defendant asserts that the withheld information was material because it pertained to central issues: 1) whether Defendant knew that his employees were not working the hours billed in their time sheets, and 2) Defendant's defense that the Government's various formulae for estimating the hours Arnold actually worked were inaccurate.

Defendant contends that there is a reasonable probability that the outcome of the trial would have been different on Count 7 if the jurors were told that Arnold believed she worked at least 50% of the hours billed, and that she did not believe that Defendant knew she did not work all of the hours billed. Defendant argues that this newly discovered evidence is not cumulative because Arnold did not testify, and this information would have provided jurors with her perspective. Further, Defendant asserts that the Government's *Brady* error undermines confidence in the verdict on the remaining counts. If the withheld information caused jurors to acquit Defendant on Count 7, he argues they would also have had more reason to question the Government's other proofs. If jurors believed Defendant was oblivious of one employee's lack of attendance, he contends they may have also been more receptive to this defense with respect to other employees.

Lastly, Defendant contends that good cause warrants an additional remedy

4

under FRCrP 16(c)[3] and (d)[4]--an order that the Government turn over all handwritten rough notes of debriefing interviews of lay witnesses who testified on the counts for which he was convicted.

The Government denies that its failure to disclose either statement constitutes a *Brady* violation. The Government argues that its failure to disclose Arnold's statement about Defendant's knowledge is not subject to *Brady* analysis because Defendant knew or should have known that Arnold might offer exculpatory testimony. Alternatively, even if *Brady* applies, the Government says Arnold's statement is not material because it was

---

[3]FRCrP 16 (c) states:

(c) Continuing Duty to Disclose. A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:

(1) the evidence or material is subject to discovery or inspection under this rule; and

(2) the other party previously requested, or the court ordered, its production.

[4]FRCrP 16(d) states:

(d) Regulating Discovery.

(1) Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

(2) Failure to Comply. If a party fails to comply with this rule, the court may:

    (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

    (B) grant a continuance;

    (C) prohibit that party from introducing the undisclosed evidence; or

    (D) enter any other order that is just under the circumstances.

purely speculative and would not have been admissible under the rules of evidence.[5]

Further, the Government contends that it is not likely that the outcome of the trial would

have been different because Arnold lacks credibility (in light of her relationship with

Defendant) and because of the overwhelming evidence that Defendant put other so-

called "ghost" employees on his payroll.

The Government denies Defendant's claim that it suppressed an assertion by

Arnold during her debriefing, that she worked at least 50% of the hours billed.  Rather,

the Government provides an affidavit from Harris indicating that Arnold only told the

prosecution team that she attended precinct meetings, which only accounted for 12.5 of

the 80 hours billed each month, and senior breakfasts, which occurred every other

month.  Gov't Exh. A at ¶5-6.  Harris further states that the notation in his notes on

which Defendant relies--"actual best belief @ 50% of time"--refers to a comment she

made to him outside the presence of the prosecution team.  *Id* at ¶7.  Harris says Arnold

told him that she would attempt to locate additional documents which would possibly

show that she worked 50% of the 69.5 hours for which she could not account.  *Id*.

Harris did not share this information with Bullotta until he was asked about his notes

after Defendant filed this motion.  *Id*.

## IV.    APPLICABLE LAW AND ANALYSIS

The Supreme Court in *Brady v Maryland*, *supra*, held that "the suppression by

the prosecution of evidence favorable to an accused upon request violates due process

---

[5]Defendant argues that Arnold's statement would have been admissible under
FRE 804(b)(3) as a statement against penal interest, or it would have led to the
discovery of admissible evidence.

where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, a defendant must show that the evidence was: 1) favorable to him; 2) suppressed by the government; and 3) material to guilt or punishment. *See United States v Bagley*, 473 U.S. 667, 676 (1985); *Stickler v Greene*, 527 U.S. 263, 281-282(1999).

The government has a duty to disclose such evidence even if no request is made by the accused, *United States v Argus,* 427 U.S. 97, 107 (1976); *Stickler*, 527 U.S. at 280, and the duty extends to exculpatory or impeachment evidence. *Bagley*, 473 U.S. at 676. The government's obligation extends to an agent's rough interview notes if they contain exculpatory evidence not otherwise disclosed. *See United States v Pelullo*, 105 F.3d 117, 122-123 (3rd Cir. 1997); *United States v Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996); *United States v Anderson,* 31 F.Supp.2d 933, 949 (D. Kan. 1998). And, a prosecutor's claim that he was unaware that agents working on the government's behalf discovered exculpatory evidence does not foreclose a *Brady* claim. The burden is upon the government to "learn of any favorable evidence known to others acting on [its] behalf in the case, including the police" to ensure that *Brady* obligations are met. *Kyles v Whitley,* 514 U.S. 419, 438 (1995).

### A. Hours Worked

Defendant failed to establish each element of a *Brady* violation with regard to Arnold's alleged assertion that she worked at least 50% of the hours billed. Such a claim would be favorable to Defendant. But, Defendant does not offer any evidence to refute Harris' assertion that Arnold never made this statement to the prosecution team. Harris avers that Arnold only made the claim to him outside the presence of the

7

prosecution team.  Harris' affidavit is unrefuted and Defendant has not presented

evidence that the prosecution was otherwise made aware of Arnold's claim prior to trial.

Therefore, inasmuch as Defendant has not established that the prosecution team was

even aware Arnold claimed to have worked at least 50% of the hours billed, Defendant

cannot establish that the Government suppressed this information in violation of *Brady*.

### B.      Defendant's Knowledge

The Government's failure to disclose Arnold's claim that Defendant did not know

that she was not working all of the hours for which she was paid also was not a *Brady*

violation.

In *United States v Wilson*, 901 F.2d 378 (4th Cir. 1990), defendant was convicted

of illegally exporting weapons to Libya.  Years later, defendant filed a 28 U.S.C. §2255

motion to vacate, set aside or correct his sentence.  Defendant alleged that the

government withheld evidence favorable to him during pretrial proceedings.

Specifically, he alleged the government failed to reveal that a witness said that her

boyfriend, a CIA official allegedly involved with the defendant (presumably, in the

criminal activity), intended to frame him (defendant) for illegal arms exportation.

The district court dismissed defendant's motion in part because the evidence

allegedly withheld was available from witnesses defendant could have called at trial.

The Fourth Circuit affirmed.  In its analysis, the appellate Court noted that *Brady* does

not apply if the evidence in question is available to the defendant from other sources.

901 F.2d at 380.  The *Wilson* Court acknowledged that a statement which suggested

defendant was framed would have helped his case.  However, it held there was no

*Brady* violation because defendant was free to question the CIA official's girlfriend in

preparation for trial.  Additionally, since defendant was aware of her relationship with the

CIA official and he believed he was framed, the Court said it would have been natural

for him to interview her to determine if she could provide exculpatory evidence.  In sum,

the Court stated:  "In situations such as this, where the exculpatory information is not

only available to the defendant but also lies in a source where a reasonable defendant

would have looked, a defendant is not entitled to the benefit of the *Brady* violation."  901

F.2d at 381.

The Sixth Circuit in *Spirko v Mitchell*, 368 F.3d 603 (6th Cir. 2004), *cert. den.,* 544

U.S. 948 (2005), cited *Wilson* with favor with respect to a defendant who alleged the

government withheld evidence he contended supported his co-defendant's alibi and

exculpated him by implication.  It was undisputed that defendant received some of the

government's investigative reports and other documents which revealed: 1) that his co-

defendant was in another state the day before the crime (abduction and murder), and 2)

the identity and location of some witnesses.  Nevertheless, defendant asserted that the

government violated *Brady* because it did not give him *all* of its evidence.

Consistent with *Wilson,* the *Spirko* Court held that a defendant's right to a fair trial

is not compromised by the government's failure to disclose exculpatory evidence if the

defendant was aware of the essential facts necessary for him to obtain the same

evidence:

> [B]ecause *Brady* did not alter the rule that defendants have no
> general constitutional right to discovery in criminal cases, a
> prosecutor violates his constitutional duty of disclosure only if "his
> omission is of sufficient significance to result in the denial of
> defendant's right to a fair trial," *United States v. Todd,* 920 F.2d 399,
> 405 (6th Cir.1990) (quoting *United States v. Agurs,* 427 U.S. 97, 108,
> 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)), and where the defendant

was "aware of the essential facts that would enable him to take advantage of the exculpatory evidence," the government's failure to disclose it did not violate *Brady*. *Id.*

368 F.3d at 610. *Spirko* held that *Brady* did not apply because the information provided to defendant made him aware of the essential facts to allow him to obtain the withheld evidence from other sources. *Id* at 611. The Court said a reasonable defendant would have pursued that inquiry. *Id.*

*Spirko* is distinguishable on its facts, but *Wilson* is analogous and the holding in both cases applies here. Defendant was indisputably aware that Arnold might be a source of exculpatory evidence and reasonably should have inquired. His defense was that he was unaware that Arnold did not work all of the hours assigned. In support, he elicited testimony from witnesses who worked in his office (Zen Braswell and Andrea Perry) that Arnold attended events and submitted oral and written reports and other documents which suggested that she was performing her duties. And, Haynie's 302 suggested that Arnold did not directly implicate Defendant during her discussions with the Government. According to the 302, Arnold only discussed her personal relationship with Defendant and her own acts and omissions as Defendant's legislative assistant. The extent to which Defendant was aware of her conduct, if at all, was not addressed.

During oral arguments following the evidentiary hearing, Defendant's trial attorney, Steven Fishman, stated that he elected not to interview Arnold as a potential witness because he presumed from his reading of the 302 that she would not offer exculpatory evidence. Had her omitted statement been included, however, Fishman said he would have sought to call Arnold as a witness or admit her statement. Absent notice via the 302, Fishman essentially argued that he had no way of knowing that

Arnold would offer exculpatory testimony and, therefore, there was no apparent reason to pursue the matter further.

This argument is unavailing. Even without the Government's disclosure of her statement, Defendant was aware of essential facts which put him on notice that Arnold might support his claim that he was unaware of her conduct; namely, his own claimed obliviousness, oral and written reports and other documents he received which suggested that she was working, other employees who attested to attending events with Arnold, and Arnold's apparent failure (according to the 302) to implicate him during discussions with agents. Contrary to Defendant's suggestion that the 302 somehow misdirected him into believing that Arnold was not a viable defense witness, the 302 is in fact glaringly silent about the extent to which Defendant was aware of Arnold's activities, which left open the possibility that she would offer favorable testimony. For these reasons, as in *Wilson*, Arnold was a source a reasonable defendant would have explored for exculpatory evidence. And, Defendant asserts that Arnold's Fifth Amendment rights would not have been an obstacle to her testifying at his trial. *See* Def. br. at pp. 10-13 (arguing that there are grounds for an order compelling the Government to grant Arnold immunity from further federal prosecution because she would have been a material defense witness).[6]

---

[6]Presuming Defendant is correct, the Court's order would not insulate Arnold from state prosecution. However, with the agreement of the parties so that Arnold could testify at the evidentiary hearing without threat of state prosecution, the Court secured a commitment from Wayne County Prosecutor Kym Worthy that the Wayne County Prosecutor's Office would not prosecute her for the actions covered in the Indictment, provided Arnold does not withdraw her plea in this Court or otherwise challenge her conviction. The same steps could have been taken prior to trial.

*Brady* does not apply.

The Court also is not persuaded that Defendant established good cause, under

FRCrP 16 (d)(1), to require the Government to turn over all the handwritten rough notes

of interviews with lay witnesses who testified on Counts 5-8 and 10.

## V.    CONCLUSION

Defendant's motion is **DENIED**.  Defendant is to appear for sentencing on

**August 23, 2007**   at **11:00 AM** .

**IT IS SO ORDERED.**


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 26, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 26, 2007.

s/Carol A. Pinegar
Deputy Clerk