UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,              CASE NUMBER:  05-81027
                                            HONORABLE VICTORIA A. ROBERTS
v.

ALONZO BATES,

                    Petitioner.

_____/

## ORDER DENYING CERTIFICATE OF APPEALABILITY

**I.      INTRODUCTION**

Petitioner Alonzo Bates asks the Court to reconsider its decision denying his

Application for a Certificate of Appealability ("COA").  (Dkt. #149).

Petitioner's motion for reconsideration is **DENIED**.

**II.      BACKGROUND**

Petitioner was convicted on August 31, 2006, of: (1) four counts of Theft From

Program Receiving Federal Funds, in violation of 18 U.S.C. § 666; (2) one count of

Interference with Commerce by Extortion, in violation of 18 U.S.C. § 1951; and (3) one

count of Bank Fraud, in violation of 18 U.S.C. § 1344.

In February 2009, Petitioner moved to vacate, set aside or correct his sentence

pursuant to 28 U.S.C. § 2255.  Petitioner's first argument was that his trial counsel

rendered ineffective assistance by failing to investigate a known exculpatory witness.

The Court declined to review this claim, because it was suitable for review as part of

Petitioner's direct appeal to the Sixth Circuit.

Petitioner also argued that the Eastern District of Michigan's jury-selection plan discriminates against Blacks and in favor of White jurors, in violation of the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861 et seq., and the Fifth and Sixth Amendments of the United States Constitution. On October 9, 2009, the Court: (1) dismissed the JSSA claim as time-barred; (2) held that Petitioner failed to establish a prima facie violation of the Fifth Amendment's Equal Protection Clause; and (3) ordered an evidentiary hearing on the Sixth Amendment claim. (Dkt. #132.) On December 15, 2009, the Court held that the jury-selection plan did not violate Petitioner's right to a jury drawn from a fair cross-section of the community. (Dkt. #142.) Petitioner immediately filed for a notice of appeal.

On July 14, 2010, the Sixth Circuit placed Petitioner's appeal in abeyance, retained jurisdiction, and remanded to this Court "for the sole purpose of determining whether to grant a certificate of appealability." (Dkt. #147.) The Court declined to issue the COA on July 23. (Dkt. #148.) Four days later, the Sixth Circuit issued an order resuming the case on appeal and removing it from abeyance status. *United States v. Bates*, No. 10-1094 (6th Cir. July 27, 2010). On August 6, 2010, Petitioner filed this motion for reconsideration.

## III.  ANALYSIS

The Government contends that, since Petitioner's motion was filed after the Sixth Circuit removed the case from abeyance status, this Court has no jurisdiction over this motion. The Government argues Petitioner's sole remedy is to seek a COA from the Sixth Circuit.

The Court disagrees. A motion for reconsideration is construed as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). Rule 59(e) allows a district court to amend an order if the moving party establishes: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (*citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). It is also the last chance to ensure that the appellate record is complete. This Court will not presume the unavailability of such a safeguard in the absence of an express rule or a clear directive from the Court of Appeals. In any case, the issue is moot because Petitioner's motion for reconsideration is denied.

A prisoner cannot appeal the denial of his or her 28 U.S.C. § 2255 habeas petition without a Certificate of Appealability ("COA") from either a district or circuit court judge. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). If granting the COA, the judge must identify which specific issues are appealable; if denying the application, s/he must explain why. Fed. R. App. P. 22(b).

To obtain a COA, the applicant must make "a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). The substantial showing threshold is satisfied when the petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve

encouragement to proceed further.") (*quoting Gordon v. Willis*, 516 F. Supp. 911, 913

(N.D. Ga. 1980) (internal quotation omitted)) (emphasis and alteration in *Barefoot*).

As the Supreme Court explains, the "substantial showing" inquiry "does not

require full consideration of the factual or legal bases adduced in support of the claims."

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Id.* at 338 (*quoting Barefoot*, 463 U.S. at 893). Nevertheless, the district court must

make an "individualized determination" on each claim presented; blanket grants or

denials of COAs will be vacated and remanded for reconsideration. *See Murphy v.*

*Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (*per curiam*).

Petitioner requests a COA to appeal the issue of whether the Court's jury-

selection plan denies defendants their right to a jury drawn from a jury pool which

represents a fair cross-section of the community. To establish a prima facie violation of

the Sixth Amendment's fair-cross-section requirement,

> the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Petitioner has no quarrel with the Court's application of the first two *Duren*

factors. However, he disagrees with the finding that the jury-selection plan does not systematically exclude African Americans.

In *Duren*, the Supreme Court defined systematic exclusion as a large disparity in representation which occurs "not just occasionally," and whose cause is "inherent in the particular jury-selection process utilized." 439 U.S. at 366; *accord Smith v. Berghuis*, 543 F.3d 326, 339 (6th Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1382 (2010).

Petitioner offered several reasons for the underrepresentation of African Americans in the Court's jury pool, including: (1) the number of juror questionnaires erroneously sent to counties outside the Detroit Division; (2) high rates of excused, disqualified and deceased jurors in Wayne County, which has the largest African-American population in the Division; (3) the fact that a disproportionate number of questionnaires sent to Wayne County are either returned undelivered ("undeliverables") or not returned at all ("nonresponses"). After analyzing each possible explanation, the Court determined that none is "inherent in" the Eastern District's jury-selection plan.

Petitioner contends that reasonable jurists would debate whether the exclusion of African Americans from the Court's jury venires is systematic. First, Petitioner argues that he met his burden under *Duren* by showing that the discrepancy between Black and White jurors occurs regularly. In support, Petitioner quotes from *Duren*:

> in order to establish a prima facie case, it was necessary for petitioner to show that the underrepresentation of women, generally and on his venire, was due to their systematic exclusion in the jury-selection process. Petitioner's proof met this requirement. His undisputed demonstration that a large discrepancy occurred not just occasionally, but in every weekly venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic -- that is, inherent in the particular jury-selection process utilized.

439 U.S. at 366. On its own, this excerpt supports Petitioner's argument. If one continues to read the *Duren* opinion, however, one finds this passage on the next page:

> Petitioner demonstrated that the underrepresentation of women in the final pool of prospective jurors was due to the operation of Missouri's exemption criteria -- whether the automatic exemption for women or other statutory exemptions -- as implemented in Jackson County. Women were therefore systematically underrepresented within the meaning of *Taylor* [*v. Louisiana*, 419 U.S. 522 (1975)].

*Id.* at 367 (footnote omitted). As the Supreme Court makes clear, a discrepancy that recurs over time does not, by itself, prove systematic exclusion. Petitioner must also show that this discrimination is "inherent in the particular jury-selection process utilized." *Id.* at 366. This Petitioner fails to do.

Clarifying the proper reading of *Duren* explains why Petitioner's second argument also fails. Petitioner cites the evidentiary-hearing testimony of his expert, Dr. Michael Thomson, who said that the underrepresentation of African Americans in the Court's jury pool was attributable to "a systematic reason related to race." Transcript of Evidentiary Hearing (Nov. 12, 2009), at 88). However, in the very next sentence, Mr. Thomson admitted: "We don't know what the reason is." (*Id.*) This argument seems like a variation on the tort doctrine of *res ipsa loquitur*. Petitioner seems to say: "We don't know what causes this discrepancy, but since it occurs regularly, the problem must be the system itself." However, *Duren* requires identifying the specific cause of the discrepancy; otherwise, it is impossible to tell if it is "inherent in" the system or not.

As stated earlier, Petitioner suggested several explanations for the low ratio of African Americans in Eastern District jury pools. However, after careful analysis, the Court determined that they are not "systematic" as defined by *Duren*. Nevertheless,

Petitioner argues, the Court should grant his COA because the Sixth Circuit has not decided whether high nonresponse rates constitute systematic exclusion. (*See* Dkt. #142, at 33.) Petitioner seems to suggest that, simply because the Sixth Circuit has not considered a particular legal issue, that issue is debatable. This is absurd, of course. If this were the standard, the only deniable COAs would be for matters adjudicated by the Supreme Court. "The test for issuing a certificate of appealability is not whether the argument previously has been considered but whether reasonable jurists could debate the outcome. While the lack of precedent on an issue might inform that decision, it does not control it." *Hill v. Dailey*, 557 F.3d 437, 439-40 (6th Cir. 2009).

The decisions of other courts do not control whether to grant a COA either, but they are informative nevertheless. As the Court noted in denying Petitioner's § 2255 motion, other jurisdictions which considered this issue conclude that "high nonresponse rates . . . are factors external to, and not inherent in, jury selection plans." (Dkt. #142, at 32 (*citing United States v. Orange*, 447 F.3d 792, 800 (10th Cir. 2006); *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996); *United States v. Murphy*, No. 94 CR 794, 1996 WL 341444, 1996 U.S. Dist. LEXIS 8488, at *12-13 (N.D. Ill. June 18, 1996) (unpublished); *United States v. Ortiz*, 897 F. Supp. 199, 205 (E.D. Pa. 1995)).) As the Tenth Circuit said in *Orange*, "[d]iscrepancies resulting from the private choices of potential jurors do not represent the kind of constitutional infirmity contemplated by *Duren*." This proposition, that private choices of potential jurors are not "inherent in the particular jury-selection process utilized," is simply not one reasonable jurists would debate.

## IV. CONCLUSION

Petitioner fails to make a substantial showing that he was denied a constitutional right. Accordingly, his Motion to Reconsider Order Denying Certificate of Appealability is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 23, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2010.

s/Carol A. Pinegar
Deputy Clerk